Carl D. TURNBOW, Petitioner,

v.

Donald E. POWERS, Judge of the District Court of Lincoln County, State of Oklahoma, Respondent.

No. 55546.

Supreme Court of Oklahoma.

Dec. 2, 1980.

Frasier, Frasier & Gullekson by Stanley D. Monroe, Tulsa, for petitioner.

Richard James, James & Gilmore, P. C., Stroud, for respondent.

WILLIAMS, Justice:

The facts giving rise to the instant litigation in this court are as follows. Mr. C. E. Turnbow sued Mr. Carl D. Turnbow in Lincoln County. The plaintiff apparently had a summons prepared and delivered to the Lincoln County Sheriff's office with instructions to await word when it could be served.

An apparent opportunity arose, the sheriff was notified that the defendant in the trial court, our present petitioner, was at

his ranch in northern Lincoln County and Deputy Mathes went there to serve him. He learned the defendant in that case had gone to Chandler to visit an employee who was a patient in the hospital.

Deputy Mathes was informed that the defendant, our petitioner, was driving a black Continental. The deputy told some one at the ranch he had some civil papers to serve on Mr. Carl D. Turnbow.

Deputy Mathes went to the hospital to serve Mr. Turnbow. At about the time he arrived there, a blue Pontiac drove up to near the hospital door, a lady later proven to be Mrs. Carl D. Turnbow got out and went in. Shortly afterward, our petitioner rushed out of the hospital, got in the blue Pontiac and hurriedly left, ran a stop sign and continued out of Deputy Mathes' line of view.

Meanwhile, the deputy had turned on his flashing lights and siren, and being headed in the opposite direction from that taken by Mr. Turnbow, rushed to the end of the block, turned around to follow the defendant but apparently abandoned the chase.

He then filed a criminal complaint against Mr. Turnbow for running a stop sign and eluding a police officer. The following Friday afternoon Mr. Carl D. Turnbow learned of the issuance of a warrant for his arrest, returned to Chandler, Lincoln County, to enter and did enter a plea of not guilty to the criminal charge, had a date set for a preliminary examination, bond was set and he proceeded to the Lincoln County Sheriff's office where he was "booked in" and made bond and was immediately served with summons in Mr. C. E. Turnbow's civil suit against him. Petitioner appeared specially, moved to quash service and deny venue and jurisdiction. His motion was overruled, whereupon this proceeding was commenced.

Petitioner contends that the case of *Thomas v. Blackwell*, 172 Okl. 487, 46 P.2d 509 (1935) is controlling. In that case the court was faced with an appeal from an

adverse judgment in a civil matter involving a car wreck. The civil suit was in Washita County, the site of the accident. Defendant resided in Caddo County. The plaintiff filed the civil suit the same day he filed a criminal complaint.[1] Warrant and summons were issued. Defendant was arrested in Caddo County and taken before a Justice of the Peace in Washita County and there gave bond. Immediately following, while still in the office of said Justice of the Peace the defendant was served with the summons in the civil case. The trial court overruled the motion to quash, exception was taken and defendants interposed the defense of contributory negligence. This court reversed and remanded with instructions to sustain motion to quash. The court in its syllabus said:

"A nonresident who is compulsorily brought into a county other than his residence, to attend court in answer to a criminal charge pending against him, is immune from service of civil process, for a reasonable time, while going to, attending at, or returning from court, in the furtherance of the administration of justice and as a matter of public policy, when timely application is made to claim such immunity from service."

The respondent counters petitioner's contentions by saying that there are exceptions to the immunity recognized in *Thomas v. Blackwell*, that the present situation is indeed such an exception and that under 12 O.S.1971 § 139 petitioner was properly served in Lincoln County and that venue is therefore proper. In support of the contention that exceptions exist and that the present case is such an exception, the respondent cites *Hixon v. Chamberlin*, 116 Okl. 77, 243 P. 183 (1926). In that case, this court allowed service to stand against a charge of immunity from service while attending a criminal matter. The defendant, a resident of Oklahoma County, in *Hixon v. Chamberlin* had been arrested on criminal charges issued out of Garvin County and

---

1. In an action arising out of the same facts, *Thomas v. Wall*, 172 Okl. 493, 46 P.2d 516 (1935) decided the same day as *Thomas v.* *Blackwell, supra*, the court reached the same conclusion although the plaintiff below, Wall, had no part in filing the criminal complaint.

after preliminary examination made bond, the bond to also be signed by a party residing in Garvin County. Later the surety refused to sign. The defendant in the criminal action was told he needed to return to Garvin County to make a new bond or strengthen the existing bond or be arrested. Upon defendant's return to Garvin County he was served with civil process. The rationale for allowing service to stand, given by the court in *Hixon v. Chamberlin, supra,* was that the return was mandated by the defendant's own negligence in failing to procure proper bond in the first instance and, therefore, it was a return not necessitated by service of process or attendance in court.

Respondent also cites the rationale for the exception, it being "immunity from service of civil process . . . is founded on the necessities of judicial administration and its object is to protect the authority or tribunal conducting such hearing and not the immunity of the person, and is extended or withheld only as judicial necessities require." *State v. Ferris,* 405 P.2d 156, 157 (Okl.1965) syllabus by the court.

Respondent says that the facts here show that the petitioner was attempting to avoid lawful service in Lincoln County and that the authority of the court would not be strengthened by allowing immunity in this case.

■ Under the facts of this case, where it is shown the petitioner responded to the warrant, does this place him within the exception created by *Hixon v. Chamberlin, supra*? We think not. There are many jurisdictions that hold that a nonresident who makes appearance in connection with a criminal charge is immune from service of civil process.[2] Indeed the public policy argument would support immunity for the person making an appearance of his own accord as opposed to one making an appearance after an arrest, on the basis of approv-

al of appearance without requiring public expenditure for an arrest.

In *Church v. Church,* 50 App.D.C. 239, 270 F. 361, 14 A.L.R. 769 (1921) the District of Columbia Court of Appeals was faced with a defendant who had been served in Washington D.C. while in response to a related criminal charge. In relation to the public policy argument the court said "By coming voluntarily the defendant removes an obstacle to the administration of justice and saves the expense and trouble of extradition. Is it not in the interest of a sound public policy that this should be encouraged?" The same argument holds true under the circumstances of this case.

A decision of this court deemed supportive of the determination we reach in this case, although it concerns immunity for a witness from Arizona appearing to testify in an Oklahoma County Children's Court proceeding in response to notice from that court is the case of *Bingham v. Bingham,* 366 P.2d 396 (1961). This court there recognized the importance of disallowing interference with obedience to civil process commanding attendance at judicial proceedings. We there referred to *Thomas v. Blackwell, supra,* and our opinion states:

"[W]e have stated that nonresident witnesses who voluntarily come into the jurisdiction for the purpose of assisting our courts in the ascertainment of truth should be able to come with an implied understanding that they will be free from any possibility of becoming involved in other litigation here." *Lonsdale Grain Co. v. Neil,* 73 Okl. 221, 175 P. 823.

Today we adopt a position hopefully avoiding problems associated with requiring a determination as to the voluntariness of appearance, for defendant to be immune from service of civil process. We hold that immunity attaches regardless of the voluntariness of the appearance.[3] As said by the court in *Church v. Church, supra:*

2. For an extensive presentation of authority of the five positions: immunity for voluntary appearance, immunity for involuntary appearance, immunity regardless of voluntariness of appearance, no immunity under voluntary appearance, and no immunity if appearance involuntary, see 20 A.L.R.2d 163, 180, § 13 Voluntariness of Appearance.

3. We do not recede from our statement in *Mo-*

"[W]hether we view his appearance as voluntary or involuntary we think the privilege attached to him, and that the service should have been quashed. It would border on an abuse of process to force a person to come within the jurisdiction for one purpose, say that he may be prosecuted for a crime, and then subject him to other litigation, for which he could not have been compelled to leave the state of his home."

The analogy between state and county is, in this instance, applicable.

Likewise, we do not agree with respondent that withholding the claimed immunity would strengthen the authority of the courts of this state. To the contrary, should this exception be allowed there would be a great temptation to file criminal charges alleging criminal acts occurring while attempting to elude service, against a prospective defendant to enable the obtaining of service of summons on him in order to bring him into a county believed more favorable to the plaintiff.[4]

We are aware of no provision of law which requires a person to make himself available to service of process.[5] Although we do not condone this petitioner's actions, the possibility for greater harm would exist should we decide otherwise. Presumptively, the petitioner still must face the criminal charges pending against him.

Because under this opinion it has been decided that service was improperly made in this case, we need not reach petitioner's second contention (that venue should be in Creek County where he resides).

ORIGINAL JURISDICTION ASSUMED AND WRIT GRANTED PROHIBITING RESPONDENT FROM PROCEEDING FURTHER IN THE CAUSE FROM WHICH THIS PROCEEDING AROSE.

LAVENDER, C. J., and BARNES, SIMMS, DOOLIN and OPALA, JJ., concur.

IRWIN, V. C. J., and HODGES and HARGRAVE, JJ., dissent.

---

*sier v. Aspinwall,* 151 Okl. 97, 1 P.2d 633 (1931) that the service of summons upon a defendant in a civil case while he was under arrest on a criminal charge, was not void although he had come into the county voluntarily rather than in response to a warrant or summons, where he had entered an appearance and let the case go to default judgment and did not raise the question of validity of service until afterward and then in a proceeding on petition to vacate the default judgment.

4. In note 4 at page 183 of the 20 A.L.R.2d annotation referred to in note 2, supra, it is stated that "it has been widely held that service of process upon a nonresident will be set aside, where the criminal proceedings against him are used as a ruse or pretext for, or in bad faith for

the bare purpose of, getting him into the jurisdiction to be served with such process."

In *Berryhill v. Stufflebean,* 176 Okl. 476, 55 P.2d 469 (1936) this court reversed a judgment under practically such circumstances.

5. We find no statutes or decisions directly on point. In looking to cases relating to process brought under 21 O.S.1971 § 54 which provides in essence that delaying or obstructing any public officer in the performance of his duty is a misdemeanor, we note that merely defeating or opposing process is not actionable. For an act to be punishable, there must be an obstruction of performance of duty by the officer himself, *Cummins v. State,* 6 Okl.Cr. 180, 117 P. 1099 (1911); *Knoff v. State,* 18 Okl.Cr. 36, 192 P. 596 (1920).